UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                    :
UNITED STATES OF AMERICA,           :        CASE NO. 1:06-CR-161
                                    :
            Plaintiff,              :
                                    :
vs.                                 :        OPINION & ORDER
                                    :        [Resolving Doc. Nos. 106, 107, 136]
ROBERT LEE EVANS,                   :
                                    :
            Defendant.              :
                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

         With this Opinion and Order, the Court decides whether to grant Defendant Robert Lee

Evans's ("Evans") motions for judgment of acquittal or, in the alternative, a new trial.  These

motions follow Evans's jury conviction on one count of the Government's two-count indictment

against him for the distribution of cocaine base ("crack") and cocaine in two "controlled buys"

initiated by an undercover drug task force on February 23, 2006 and March 4, 2006.

         On August 17, 2006, a jury found Evans guilty of selling cocaine on March 4, 2006 to Jerrell

Bray ("Bray"), a confidential informant to the United States' Drug Enforcement Agency ("DEA")

and the Cleveland Police Department. [Doc. 102.]  On August 28, 2006, pursuant to Rule 29 of the

Federal Rules of Criminal Procedure, Evans moved the Court for a judgment of acquittal of the

jury's verdict or, in the alternative, for a new trial under Criminal Rule 33. [Docs. 106, 107.]  The

Government opposed Evans's motions. [Docs. 113, 114.]  Upon leave of the Court, Evans filed a

supplemental motion for a new trial. [Doc. 136.]

         For the reasons presented below, the Court **DENIES** Evans's motions.

-1-

Case No. 1:06-CR-161
Gwin, J.

I.  Background

On February 23, 2006 and March 4, 2006, Defendant Evans sold crack and cocaine to an undercover DEA task force and Informant Bray.  At the time of his drug sales, Evans did not know that Bray acted as a confidential informant in an undercover "sting" operation of the DEA and Cleveland Police Department that targeted Donnie Hood, a larger-scale drug dealer in Northeast Ohio.  After Evans's March 4, 2006 cocaine sale to Bray, the police arrested Evans.  The Government indicted Evans on two counts of distribution of cocaine base ("crack") and cocaine. [Doc. 21.]  The Court arraigned Evans, who entered pleas of "Not Guilty" to the charges against him. [Doc. 28.]  The Government's case against Evans proceeded to trial. [Doc. 62.]

From August 14, 2006 to August 17, 2006, the jury heard testimony and received evidence in the Government's action against Evans. [Trial Tr. 1-610, Aug. 14-17, 2006.]  The Government's witnesses included, *inter alia*, DEA Special Agent Lee Lucas ("Lucas"), Cleveland Police Detective Todd Clark ("Clark"), and Informant Bray.  Bray had met Evans in the Warren Correctional Institution and, after both Bray and Evans left prison, Bray "received a phone call from my brother [Dwayne saying] that [Evans] was requesting my number and my brother called me and asked me, you know, do you want me to give this guy your number and I said go ahead and give it to him." [Trial Tr. 241, 162-63, Aug. 15, 2006.]  Hence, the Government offered evidence that Defendant Evans, not Bray, sought the contact between the men.

According to Bray, Defendant Evans called him almost immediately and they set-up a meeting. [Trial Tr. 163-64, Aug. 15. 2006.]  Bray testified that Evans pushed the idea of the sale of cocaine onto Bray:

> We met at my brother's house.  We talked for a minute.  You know what I am saying?  And then he started engaging in and telling me he

-2-

Case No. 1:06-CR-161
Gwin, J.

> can get this for me  concerning drug activity.  He can get this.  He
> know this guy, he know this guy, and I am like, wow, okay.  So the
> conversation went on briefly, and then after he left, I called Agent
> Lee Lucas.  Agent Lee Lucas -- after I talked to him, me and him was
> talking, he talking about this guy.  He mentioned a guy's named
> Donnie Hood and a few other people and Agent Lee Lucas, he would
> do Donnie Hood.  I said that's what he said.  So at that point, Agent
> Lee Lucas set up a meeting with me the very next day.  We did a
> controlled phone call to him.

[Trial Tr. 164, Aug. 15. 2006.]

Thus, based on Evans's apparent eagerness to deal drugs and his knowledge of Donnie Hood,

Informant Bray contacted Special Agent Lucas, who began to formulate the undercover "sting"

operation that ultimately led to Evans's arrest and conviction.  *Id.*

In addition to presenting witness testimony, the Government offered audio recordings of

conversations between Evans and Bray in which the two men discussed details of Evans's drug sales

to Bray.  *See, e.g.*, Exh. 1A-5A.  After receiving agreement from the defense counsel, the Court

allowed the jury to read from written transcripts of the recorded conversations between Evans and

Bray. *See, e.g.*, Trial Tr. 153-56, Aug. 15, 2006.  The Government played the recordings during the

testimony of Lucas, Clark, and Bray to corroborate their versions of the facts and circumstances that

led to Evans's drug sales to Informant Bray. [Trial Tr. 21-124, 130-52, 156-207, 212-78, Aug. 14-

15, 2006.]

At trial, Special Agent Lucas, Detective Clark, and Informant Bray consistently testified that,

on March 4, 2006, Evans sold cocaine to Bray in a "controlled buy" in East Cleveland.  *Id.*

Special Agent Lucas testified that he searched Bray and his car prior to the March 4, 2006

transaction and then witnessed the transaction:

> On March 4, 2006, we . . . set up another controlled buy [of crack
> between Bray and Evans].  It was supposed to be four and a half

-3-

Case No. 1:06-CR-161
Gwin, J.

> ounces.  I think it was [in exchange for] $3,000. . . . [At the parking
> lot just east of 83rd and Superior,] I maintained surveillance on Bray
> and I observed the K car that was driven by Mr. Evans.  I observed
> Mr. Evans get out, walk up to Bray's vehicle.  They talked.  I saw a
> hand-to-hand exchange through the front window.  Mr. Evans was
> standing there.  Bray was seated in his car.  There was a hand-to-hand
> exchange and Mr. Evans left and I followed Bray after the deal, met
> up with Bray.  I recovered about two ounces of powder cocaine.  We
> were supposed to buy crack . . . [Bray] gave me and I recovered
> [$]1,500 of our money. . . . we only received half of what we were
> supposed to get.  We were supposed to get four and a half ounces and
> we only got two ounces for [$]1,500 and it was powder instead of
> being crack.  It was cocaine crystal instead of crack.  So we only got
> half of what we were supposed to get and we received powder instead
> of crack.

[Trial Tr. 63-68, Aug. 14, 2006.]

The defense counsel cross-examined Agent Lucas, but did not establish any inconsistencies

with his direct testimony about the March 4, 2006 events. [Trial Tr. 116-20, Aug. 14, 2006.]

Detective Clark also testified that Evans distributed cocaine to Bray on March 4, 2006:

> I again met with the informant [Bray], searched him and his vehicle
> and provided him with a wire and [$3,000 of] DEA buy money. . . .
> We . . . proceeded to the area of East 83rd and Superior where the
> informant met with Mr. Evans.  We were subsequently instructed to
> change locations to the area to Euclid and Superior at a Shell gas
> station.  Mr. Evans was followed by myself and other members of the
> unit to that address on Roxbury Avenue in east Cleveland.  He met
> with an individual we later identified as Arthur Ward.  After [Evans]
> met with him, [Evans] remained in the driveway of that location for
> a brief period of time and then we followed him directly back to the
> Shell gas station at Euclid and Superior where he sold cocaine, two
> and a quarter ounces of cocaine to our informant [Bray].

[Trial Tr. 141, Aug. 15, 2006.]

The defense counsel's cross-examination did not reveal inconsistencies in Detective Clark's

testimony or between that of Clark and Special Agent Lucas. [Trial Tr. 147-52, Aug. 15, 2006.]

Finally, Informant Bray testified that Evans distributed cocaine to him on March 4, 2006:

-4-

Case No. 1:06-CR-161
Gwin, J.

| | |
|---|---|
| Prosecution: | Tell me what happened in regards to the . . . buy on March 4. |
| Bray: | On March 4, we made a control [sic] telephone call. This time [the supplier] was actually going to be Donnie Hood.  I was told to meet him at 83rd and Superior.  I met him over at 83rd and Superior.  When I arrived there followed by the detectives, he told me to give him the money – he told me to give him the money and follow him.  I gave him the money, followed him up to east Cleveland at a Sunoco in east Cleveland.  He told me to park the car, and he going to pick it up.  He will be right back.  So I called special agent – |
| The Court: | You said you gave him.  Who is him? |
| Bray: | I gave Robert Evans the money and he proceeded to go pick up the drugs. |
| Prosecution: | What was your understanding in terms of what the deal was for? |
| Bray: | Eighth of a key. |
| Prosecution: | Now, prior to going to meet Mr. Evans, did the police do anything to you? |
| Bray: | Yes.  My vehicle was searched, my presence was searched and I was placed with a recording device in place. |
| Prosecution: | So you meet with Mr. Evans and you said you gave him the money? |
| Bray: | Yes. |
| Prosecution: | What happened next? |
| Bray: | I proceeded to follow him up to east Cleveland.  He was supposed to be – allegedly going to Donnie Hood's mother's house to obtain the drugs I requested.  Instead, I got left at the Sunoco waiting on him to return. |

-5-

Case No. 1:06-CR-161
Gwin, J.

| | | |
|---|---|---|
| Prosecution: | Okay.  How long did you wait for him to return? |
| Bray: | About 10 to 15 minutes. |
| Prosecution: | What happened next? |
| Bray: | Next, he pulled up, he pulled up, walked over to my car, handed me a bag and handed me some money back.  I had a problem with that. |
| Prosecution: | Why did you have a problem with that? |
| Bray: | Because it wasn't what he expressed to me it was going to be.  So my problem is you took my money and spent it with somebody and I wasn't there to see exactly what took place.  So you bringing me back half of my money and half of the dope. |
| Prosecution: | What happened after that? |
| Bray: | Me and him exchanged some words.  I called Special Agent Lee, which he was already watching the situation.  I told him what had happened and he said okay, just get out of there. |
| Defense: | Objection |
| The Court: | Overruled. |
| Prosecution: | What happened next? |
| Bray: | He told me to get out of there.  I started pulling out. Special Agent Lee pulled in behind me, followed me to a space where we both pulled over and I turned over the drugs and money to him. |

[Trial Tr. 204-06, Aug. 15, 2006.]

As with Agent Lucas and Detective Clark, the defense counsel cross-examined Informant

Bray. [Trial Tr. 212-73, Aug. 15, 2006.]  During cross-examination, the defense counsel did not ask

Bray any specific questions about the events on March 4, 2006.  *Id.*

-6-

Case No. 1:06-CR-161
Gwin, J.

Evans took the stand and admitted that he sold drugs to Bray on February 22, 2006 and

March 4, 2006. [Trial Tr. 463, Aug. 16, 2006.].  Evans testified that knew Bray from the Warren

Correctional Institution where both men had been incarcerated. [Trial Tr. at 425-26, Aug. 16, 2006.]

Evans said that he was in regular contact with Bray from May through November 2005 and then

again starting in January 2006. [Trial Tr. 426-40, Aug. 16, 2006.]  Evans testified that he talked to

Bray about knowing Donnie Hood. [Trial Tr. 445, 452-53, 489-90, Aug. 16, 2006.]  Evans discussed

gambling with Bray at "Donnie Hood's spot on 83rd and Superior." [Trial Tr. 458-59, Aug. 16,

2006.]  Throughout Evans's testimony, he told the jury that he knew of Bray's interest in buying

drugs and Evans's access to the same.  *See, e.g.*, 435-36, 444, Aug. 16, 2006.

In defense of his admitted sales of crack and cocaine to Bray, Evans attempted to establish

that Bray entrapped him to commit crimes that he otherwise would not have committed.  *See, e.g.*,

Trial Tr. 463-64, Aug. 16, 2006.  Evans told the jury that he dealt with Bray because he wanted

Bray's help in establishing an automobile re-sale business.  *Id.*  To show that he was not otherwise

disposed to sell cocaine, Evans called a number of witnesses who testified that Evans had

undertaken significant efforts to better himself, including obtaining further education, employment,

and attempting to establish legitimate businesses. [Trial Tr. 343-88, Aug. 16, 2006.]

Upon cross-examination, Evans claimed that he sold the drugs to Bray despite knowing that

doing so would jeopardize his efforts to set up otherwise legitimate businesses:

> Prosecution:   Your whole representation to this jury, is it not, that
> the reason you got back into the drug trade was
> because Jerrell Bray kept pushing you and when he
> offered you the carrot that you could sell cars
> together, you decided, okay, I'm going to do this;
> isn't that correct?

> Evans:   I never got back into the drug business personally,

-7-

Case No. 1:06-CR-161
Gwin, J.

|                |                                                                                                                                    |
|----------------|------------------------------------------------------------------------------------------------------------------------------------|
|                | myself, no.                                                                                                                        |
| Prosecution:   | My question to you, though, is one of the main reasons you said you got back into it was because he could get you into the car business? |
| Evans:         | Again, I didn't get back into it.                                                                                                   |
| Prosecution:   | Okay.  Mr. Evans, why did you set up the [drug] deal on February 22 of '06?                                                         |
| Evans:         | For the promise of the license for a car dealership and cutting through the red tape as [Bray] explained to me.                     |
| Prosecution:   | So for a simple car license, you decided you were going to do this?                                                                 |
| Evans:         | Do what?                                                                                                                            |
| Prosecution:   | You were going to set up a cocaine deal?                                                                                            |
| Evans:         | I was going to put him together with a guy, yes, I did.                                                                            |

* * *

|                |                                                                                     |
|----------------|-------------------------------------------------------------------------------------|
| Prosecution:   | You were going to throw it all away for a car license?                               |
| Defense:       | Objection.                                                                           |
| The Court:     | Overruled.                                                                           |
| Prosecution:   | Is that what you're telling this jury?                                               |
| Evans:         | Again, I made a mistake.  I did some wrong.  I am not denying that fact.            |

[Trial Tr. 491-93, Aug. 16, 2006.]

After both sides rested their case, the jury deliberated and returned a verdict of "Guilty" on

the Government's charge of Evans's sale of cocaine to Bray on March 4, 2006. [Doc. 102.]  In

response, Evans moved the Court for acquittal or, alternatively, a new trial regarding the facts and

Case No. 1:06-CR-161
Gwin, J.

circumstances of his March 4, 2006 cocaine sale to Bray. [Docs. 106, 136.]

Evans bases his motions on three grounds. *Id.* First, he says that the Government did not produce sufficient "substantial and competent evidence" for the jury to find him guilty of selling cocaine to Bray on March 4, 2006. [Doc. 106.] Evans says that "[i]n this case, the government failed to present evidence from which the jury could find beyond a reasonable doubt that the Defendant was predisposed to committing [sic] the offenses charged." *Id.* Evans premises both his Rule 29 and Rule 33 motions on this argument of insufficient evidence. [Docs. 106, 107.]

In support of his Rule 33 motion for a new trial, Evans next asserts that "newly discovered evidence documenting phone calls from [Bray] warrants a new trial." [Doc. 107.] Phone records produced by Sprint / Nextel after the jury returned its verdict against Evans show that Bray "placed approximately 55 calls to [Evans] between February 7, 2006 and March 7, 2006, the date of [Evans's] arrest." *Id.* (footnote omitted). Finally, Evans claims prejudicial errors of law and prosecutorial misconduct support his motion for a new trial. [Docs. 107, 136.]

The Government opposes Evans's motions. [Docs. 113, 114.]

After an exhaustive review of the record, Defendant's "newly discovered evidence," and consideration of both sides' legal arguments, the Court now addresses and denies Evans's Rule 29 and Rule 33 motions for a judgment of acquittal or, in the alternative, a new trial.

Case No. 1:06-CR-161
Gwin, J.

### II.  Legal Standard

Rule 29(c) of the Federal Rules of Criminal Procedure provides that "[i]f the jury returns a verdict of guilty . . . , a motion for judgment of acquittal may be made . . . within 7 days after the jury is discharged . . . If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal."  FED. R. CRIM. P. 29(c).  A court may grant such a motion only where "the evidence is insufficient to sustain a conviction" of one or more of the offenses charged in the indictment.  FED. R. CRIM. P. 29(a).  In reviewing claims for sufficiency of the evidence to support a conviction, a court must review the record in the light most favorable to the prosecution and grant relief only if it finds that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

In making its Rule 29 determination, a court does not weigh the credibility of the Government's witnesses, *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998), because jurors are "well equipped to analyze the evidence" and accept or reject the believability of factual offerings in witness testimony, *Griffin v. United States*, 502 U.S. 46, 59 (1991) (citation omitted). A jury's guilty verdict will stand where the prosecution offered sufficient evidence to support any alternative factual theories upon which the guilty verdict may have rested.  *Griffin*, 502 U.S. at 59. The reviewing court need not address each of these theories.  *Id.*

Rule 33 of the Federal Rules of Criminal Procedure states that "the court may grant a new trial if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  A defendant may ground a Rule 33 motion on newly-discovered evidence or misconduct by the prosecutor or the court.  *See, e.g.*, *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999); *United States v. Garland*, 991 F.2d 328 (6th Cir. 1993).  The trial court has broad discretion to grant a Rule 33 motion.  *See, e.g.*, *United*

Case No. 1:06-CR-161
Gwin, J.

*States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).  A court should "exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Ashworth*, 836 F.2d at 266.

"New evidence" warrants a new trial "in the interests of justice" if (i) a defendant discovers it only after trial; (ii) it could not have been discovered earlier with due diligence; (iii) is material and not merely cumulative or impeaching; and, (iv) would likely produce an acquittal if a court granted the motion for a new trial.  *Garland*, 991 F.2d at 335.

When reviewing claims of prosecutorial misconduct, a court determines the propriety and flagrancy of the statements at issue.  *Francis*, 170 F.3d at 549-50.  To determine "flagrancy," the court asks (i) whether the statements misled the jury or prejudiced the defendant; (ii) whether the statements were isolated or among a series of improper statements; (iii) whether the statements were deliberately or accidentally before the jury; and, (iv) the total strength of the evidence.  *Id.*

The Federal Rules of Evidence allow the use of leading questions on direct examination "as may be necessary to develop the witness' testimony."  FED. R. EVID. 611(c).  The use of leading questions rests within the discretion of the trial court.  *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977).  An appeal cannot overturn a trial court's allowance of leading questions absent a showing of an abuse of discretion that results in prejudice or clear injustice to the defendant.  *Id.*

Entrapment exists as a defense only when the absence of a defendant's predisposition to commit the crime appears from uncontroverted evidence.  *See, e.g.*, *Sherman v. United States*, 356 U.S. 369, 373 (1952).  An accused may successfully defend on entrapment only after setting forth evidence that he did not possess the predisposition to undertake a crime that the Government actively induced him to commit.  *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002).

Case No. 1:06-CR-161
Gwin, J.

### III.  Analysis

Evans moves for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  In the alternative, he asks for a new trial under Rule 33.

Preliminarily, the Court distinguishes a motion for judgment of acquittal under Rule 29 from a Rule 33 motion for a new trial.  As set forth above, on a Rule 29 motion for judgment of acquittal, the Court must consider the evidence in the light most favorable to the Government and assume the truth of the evidence offered by the prosecution.  *Jackson*, 443 U.S. at 324.  If, on this basis, substantial evidence justifies an inference of guilt, the Court must deny the motion for acquittal.  *Id.* On a Rule 33 motion for a new trial, the Court has broader power to weigh the evidence and consider the credibility of witnesses.  *Francis*, 170 F.3d at 549-50.  If the Court concludes that the weight of the evidence does not support the jury's verdict, it can set aside the verdict and grant a new trial.  *Id.*

#### A. Evans's Rule 29 Motion for a Judgment of Acquittal

In his Rule 29 motion for acquittal, Evans says that the Government did not present sufficient "substantial and competent evidence" for the jury to find him guilty of selling cocaine to Bray on March 4, 2006.  In his instant motion, Evans once again details his version of the timing and nature of his interaction with Bray and other exculpatory evidence to advance his argument that the Government failed to prove his predisposition to deal drugs as a matter of fact.  The jury appropriately weighs matters of fact at trial, not the Court.  Thus, with Evans's motion, the Court only considers the sufficiency of the evidence adduced at trial.

Viewing the evidence against Evans in the light most favorable to the Government and assuming its truth, the Court finds that sufficient "substantial and competent" evidence exists for the

Case No. 1:06-CR-161
Gwin, J.

jury to find Evans guilty of selling cocaine to Bray on March 4, 2006. The Government presented

sufficient evidence to show that Defendant Evans distributed cocaine to Informant Bray on March

4, 2006. Evans admitted this. The Government also presented sufficient evidence to show that

Defendant Evans possessed the predisposition to distribute drugs to Informant Bray on March 4,

2006 such that Informant Bray did not entrap him to do so. Thus, the jury could find beyond a

reasonable doubt that Evans exercised his own will to sell Bray cocaine on March 4, 2006.

First, the Government provided credible evidence through the eyewitness testimony of DEA

Special Agent Lucas, Cleveland Police Detective Clark, and Informant Bray that established that,

on March 4, 2006, Evans took $1,500 from Bray, met with a known drug dealer, and returned with

approximately two ounces of cocaine that Evans then gave to Bray. As a matter of fact, this

qualifies as an illegal drug sale. The defense counsel cross-examined each of the Government's

witnesses and did not establish any inconsistencies in their testimony that detracted from the fact

of Evans's sale of cocaine to Bray. The Court does not weigh the credibility of Lucas, Clark, or

Bray, *Abdullah*, 162 F.3d at 903, and accepts the truth of their testimony, *Jackson*, 443 U.S. at 324.

On this basis, the Court determines that the jury could find beyond a reasonable doubt that Evans,

in fact, sold cocaine to Bray on March 4, 2006.

Although the Court focuses on the sufficiency of the Government's evidence in considering

Evans's Rule 29 motion, the Court also notes that Evans did not dispute that he sold drugs to Bray.

Again, in fact, Evans admitted on the stand that he made the March 4, 2006 cocaine sale to Bray.

Thus, the jury could have no reasonable doubt that the illegal transaction took place as described by

the Government and confirmed by Defendant Evans.

Similarly, the Government presented sufficient evidence from which the jury could infer his

-13-

Case No. 1:06-CR-161
Gwin, J.

predisposition to sell cocaine to Bray.  To rebut Evans's entrapment defense, the Government presented evidence that Evans instigated the drug transactions with Bray.  Informant Bray testified that Evans got his telephone number from Bray's brother, Dwayne, and told Bray that he was interested in getting back into the drug trade.  Bray testified that he gave Evans's name to DEA Special Agent Lucas, who became interested in Evans as a conduit to Donnie Hood.  Lucas then authorized the controlled telephone calls and drug purchases between Informant Bray and Evans. Lucas's testimony corroborated that of Bray and the defense counsel cross-examined both witnesses.

In its case-in-chief, the Government provided the jury with recorded audio evidence and written transcripts of telephone calls between Defendant Evans and Informant Bray.  In both content and method of expression, the calls demonstrate that Evans willingly discussed selling drugs to Bray or otherwise acting as his "connect."  The Government's audio recordings and written transcripts reflect that Bray gave Evans many opportunities to withdraw from the proposed drug transactions, each of which Evans rejected.  Instead, Evans assured Bray that he had the connections and could deliver the crack and cocaine requested by Bray.

Evans then took the stand and told the jury his version of the nature and circumstances of his relationship with Bray.  Evans refuted much of Bray's testimony and repeatedly claimed that Bray overcame his determination to engage in only "legitimate" activities.  In both his direct and cross-examination, however, Evans said he was motivated to sell drugs to Bray to then use Bray to "cut through the red tape" to obtain an automobile auction license.  For this reason, Evans says he dealt drugs with Bray.

Repeating, the jury received different evidence and could freely choose to believe that Evans's justification was not credible.  Informant Bray testified he barely knew Evans, having only

-14-

Case No. 1:06-CR-161
Gwin, J.

a brief conversation with Evans in May 2005.  After that short conversation, Bray testified that he

had no contact with Evans until Defendant Evans approached Bray early in 2006.

In support of his argument that he was entrapped, Evans says Bray overcame Evans

hesitancy through a vague offer to help Evans get access to automobile auctions.  This "justification"

is not persuasive.  Informant Bray ran no auction house, at best he was a small-time buyer and seller

of automobiles in Mansfield, Ohio.  Recall, Bray himself was only recently paroled from

incarceration.  In addition, the DEA recorded at least five conversation between Bray and Evans,

including one filling thirty-six pages of transcript.  In those transcripts, automobile licenses, auction

permits or car sales are never mentioned.  The jury could decline to credit Evans argument that he

facilitated drug sales to obtain access to auto auctions.

Contrary to Evans's assertion in his Rule 29 motion, the Court does not find as "entirely

unreasonable" the jury's finding that the Government entrapped Evans in its first charge as against

him, but not as to the second count of the indictment.  As Evans indicates in his motion, a finding

of initial entrapment does "not necessarily immunize a defendant from liability for subsequent

transactions in all cases." [Doc. 106.]  Here, the Court instructed the jury according to the Sixth

Circuit's pattern jury instructions that its decision on one charge – whether "Guilty" or "Not Guilty"

– should not influence its decision on any other charge. [Trial Tr. 546, Aug. 17, 2006.]

The two drug transactions stand alone as separate criminal acts supported by separate factual

theories that both sides presented and argued at trial.  The Government presented testimony and

evidence that implied Evans approached Bray to do the March 4, 2006 deal.  Evans testified that he

continued contact with Bray to get his help in securing an automobile auction license.  As a result,

the jury could properly weigh evidence of Evans's first count to determine that the DEA, Cleveland

-15-

Case No. 1:06-CR-161
Gwin, J.

Police Department, or Informant Bray induced Evans to sell Bray drugs on February 23, 2006. The jury could then correctly and separately consider the evidence surrounding the March 4, 2006 cocaine deal to conclude that Bray did not induce Evans to engage in drug activity on that day. Thus, the Court does not determine the factual merits of these claims, but does find that sufficient bases existed upon which the jury could conclude that Evans possessed the required predisposition to distribute drugs to Bray on March 4, 2006.

Again, with this Rule 29 motion, the Court does not weigh the credibility of the Government's witnesses or consider the factual merit of its audio recordings. *Abdullah*, 162 F.3d at 903; *Griffin*, 502 U.S. at 59. Instead, the Court determines the sufficiency of the evidence before the jury. In this case, the testimony of Witnesses Lucas, Clark, and Bray, the Government's audio recordings and written transcripts of conversations between Defendant Evans and Informant Bray, and Evans's stated purpose in dealing drugs with Bray form a sufficient evidentiary basis for the jury to find Evans's predisposition to sell cocaine to Bray beyond a reasonable doubt.

Thus, this trial controverted considerable evidence of the facts and intent of Evans to distribute drugs to Bray on March 4, 2006. Pursuant to the directives of Rule 29 and the precedent of the Supreme Court and the Sixth Circuit, the Court assumes the truth of the evidence offered by the Government as against Defendant Evans regarding its charges against him. On this basis, the Court finds that substantial evidence presented by the Government justifies the jury's finding of Evans's guilt beyond a reasonable doubt. The Court also finds that the jury correctly considered the facts and evidence presented regarding Evans's involvement in the Government's first count as against him as separate from the facts and evidence of Evans's activities in the Government's second count as against him. Therefore, the Court denies Evans's Rule 29 motion for judgment of acquittal.

-16-

Case No. 1:06-CR-161
Gwin, J.

Case No. 1:06-CR-161
Gwin, J.

### B. Evans's Rule 33 Motion for a Judgment of Acquittal

As an alternative to his Rule 29 motion for a judgment of acquittal, Evans moves the Court to grant a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In support of this motion, Evans relies on "the same reasons as set forth in [his] Rule 29 motion for acquittal" to assert that the jury's verdict against him is "against the manifest weight of the evidence." [Doc. 107.] Evans also asserts that "newly discovered evidence," prejudicial errors of law, and prosecutorial misconduct warrant the Court granting his motion for a new trial. [Docs. 107, 136.]

The Court thoroughly considered these arguments and, for the reasons discussed below, rejects them.

First, the Court finds that the jury's finding Evans guilty of selling cocaine to Bray on March 4, 2006 does not preponderate against the great weight of the evidence. Arguably, the evidence introduced at trial does not compel a guilty verdict, but the Court finds that both sides introduced a sufficient amount of direct and indirect evidence for a reasonable jury to find Evans' guilt with regard to the March 4, 2006 drug sale.

Namely, the Government introduced credible testimony and audio recordings that stated or implied Evans's actual participation in and predisposition to engage in drug transactions with Bray. Evans admitted that he distributed cocaine to Informant Bray on March 4, 2006. In his direct testimony and on cross-examination, Evans testified that he had a motive for continuing to deal with Bray after their initial drug transaction on February 23, 2006. Thus, the Court rejects Evans's sufficiency of evidence argument as a basis for granting him a new trial.

Second, Evans says that newly-discovered telephone records provide the Court with sufficient reason to grant a new trial "in the interest of justice." Again, the Court disagrees.

-18-

Case No. 1:06-CR-161
Gwin, J.

The Court reviewed the Sprint / Nextel telephone records for the cellular phone used by Informant Bray to contact Defendant Evans during the period from February 7, 2006 to March 7, 2006. Of the fifty-four calls placed from Bray's phone to Evans, only four exceed five-minutes in length. The majority of the calls are only one- or two-minutes long; presumably, Bray placed these calls to Evans, but never completed them. Six of the calls took place after March 4, 2006, the date that Evans argues Bray induced him to sell drugs. Further, the jury heard testimony from both Bray and Evans establishing that they often contacted each other to discuss drug sales, automobile auctions, and other activities.

Thus, the Spring / Nextel phone records do not contain "new evidence." Instead, the records represent impermissibly "cumulative or impeaching" evidence. *See, e.g., Garland*, 991 F.2d at 335. Nor does Evans's "new evidence," without more, support the Sixth Circuit's requirement that the Sprint / Nextel phone records would "likely produce an acquittal if the case were retried." *Id*. As a result, the Sprint / Nextel records do not compel the Court to grant a new trial.

Third, Evans argues that the Court should grant him a new trial because of allegedly prejudicial errors of law regarding the admission of testimony that Evans and Bray had engaged in more drug transactions than those charged by the Government. The Court does not agree.

As described, Defendant Evans testified on his own behalf that Informant Bray overbore his reluctance to re-enter the drug trade by implying that Bray would help Evans obtain access to automobile auctions. Evans also testified that he was not otherwise disposed to enter into such transactions. Seeking to overcome this testimony, the Government questioned Evans about additional sales of cocaine that Evans made to Bray. Before deciding to proceed to trial, Evans had discussed a plea agreement with the Government and had given a proffer statement. In that proffer

-19-

Case No. 1:06-CR-161
Gwin, J.

statement, Evans admitted four, not two, sales to Bray.  The Government argued that, having raised

an entrapment defense, evidence of additional sales were obviously relevant to whether Bray

overbore Evans's will or whether Evans possessed the predisposition to sell drugs to Bray.  If Evans

denied the other sales, the Government requested that the Court allow it to use inconsistent proffer

statements to impeach Evans.  The defense counsel objected.

After reviewing the language of the proffer contract, the Court found testimony regarding

Evans's other drug sales to be relevant to his predisposition to sell cocaine.  The Court indicated that

the Government would likely be permitted to use the proffer statements for impeachment if Evans

testified inconsistently with the proffer agreement.[1]  But then, Evans admitted that he had sold

cocaine on other occasions:

> Prosecution:       Mr. Evans, since your release from prison, how many
>                    times have you -- how many times have you set up
>                    cocaine deals since you were released from prison?
>
> Evans:             With  Confidential  Informant  Jerrell  Bray,  four
>                    occasions.
>
> Prosecution:       So you're saying that not only did you do it twice,
>                    you actually did it four times; is that correct?
>
> Evans:             Yes.

[Trial Tr. 500, Aug. 16, 2006.]

---

[1] The Court ruled:

I agree with you to that extent.  I don't think the government has to this point, but the government has
suggested that they're going to go in and ask some questions and if your client gives a statement which
would appear to be perjurious, that the government should have the right to use proper statement --
proffer statement to cross-examine him.  So I think you're right.  I don't think this supports the use,
but I think it is an area of inquiry that is relevant, so I think because this disposition is such a core
element of the entrapment defense and conduct around  this area to other parties is so relevant to that.

[Trial Tr. 499, Aug. 16, 2006.]

Case No. 1:06-CR-161
Gwin, J.

Thus, contrary to Evans's claim in his Rule 33 motion, the Government did not "directly use" Evans's proffer statement; instead, Evans openly admitted that he sold cocaine to Bray on more than two occasions.

To defeat Evans's entrapment defense, the Government needed to demonstrate that officers of the DEA, Cleveland Police Department, or Informant Bray did not induced Evans to sell cocaine to Bray.  The Government's questions that showed Evans had sold cocaine to Bray on four, not two, occasions were relevant to the question of inducement and to establish Evans's predisposition. Thus, the Government did not improperly introduce evidence of Evans's other drug sales to Bray. As a result, the evidence did not unduly prejudice Evans and does not warrant a new trial under Rule 33.

Next, in his Supplemental Motion for a new trial, Evans argues that the Government committed prosecutorial misconduct by referring to Evans as having committed prior "offenses against a minor" and asking leading questions during its direct examination of its witnesses. [Doc. 136.]  As discussed above, Evans presented evidence that he made significant efforts to better himself after his release from prison.  As a rehabilitation technique, the defense counsel sought character testimony from Evans's colleagues and relatives that showed his interest in founding an outreach program for troubled youth.

The Government objected and requested the Court allow it to counter the testimony with evidence of Evans's classification as a sexual predator.  The Court allowed the Government's line of inquiry as relevant impeachment of Evans's character testimony.  The Court does not find that the Government's line of questioning about Defendant Evans's prior convictions either tended to mislead the jury or impermissibly prejudice Evans. *Francis*, 170 F.3d at 549-50.  The weight of the

Case No. 1:06-CR-161
Gwin, J.

evidence against Evans did not go his past involvement with minors, but rather the facts and circumstances of his cocaine sales to Informant Bray and his predisposition to deal drugs.  For these reasons, the Court finds that the Government did not commit prosecutorial misconduct that warrants a new trial.

Finally, Evans argues that the Government committed prosecutorial misconduct by asking leading questions during its direct examination of its witnesses, particularly Informant Bray.  Rule 611 of the Federal Rules of Evidence allows the use of leading questions and the Sixth Circuit recognizes that their use rests within the discretion of the district court.  *See* FED. R. EVID. 611; *Shoupe*, 548 F.2d at 641.  With this argument, Evans correctly highlights a litigation weakness that, as the Court noted throughout the trial, the prosecution and defense counsel shared.

While the Court agrees with Evans that the prosecution's use of leading questions did, at times, border on "pervasive," it does not find that Government's unartful courtroom delivery rose to the level of "flagrance" required to reverse the jury's conviction of Evans.  *See, e.g.*, *Francis*, 170 F.3d at 549-550.  The jury received much more evidence of Evans's guilt than that elicited by the Government through the use of leading questions.  Further, in this trial, the Court regularly admonished the prosecution – as well as the defense counsel – to refrain from using leading questions on direct examination.  The Court did so despite both sides' lack of objections to the leading questions.  Finally, the Court does not find that the Government's leading questions resulted in "prejudice or clear injustice" to Defendant Evans.  *Shoupe*, 548 F.2d at 641.  Consequently, Evans's complaint does not create a sufficient basis for the Court to exercise its discretion to vacate the jury's verdict.

IV.  Conclusion

-22-

Case No. 1:06-CR-161
Gwin, J.

For these reasons, the Court **DENIES** Evans's Rule 29 and 33 motions for judgment of

acquittal or, in the alternative, a new trial.

IT IS SO ORDERED.


Dated: December 11, 2006                    s/_____ *James S. Gwin*_____
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE